THOMPSON, J.
 

 This suit arises out of the purchase by the plaintiff from the defendant of certain shares of the capital stock of the Bagur’s Clothes Shop, Inc.
 

 The sale of said stock was made on May
 
 *719
 
 6, 1920, and the price paid therefor was $44,-103.56.
 

 The corporation was organized on October 31, 1917, with a capital stock of $25,100 divided into 251 shares, of the par value of $100 each.
 

 The defendant subscribed for 125 shares, and her brother-in-law, Jules Bagur, subscribed for 125 shares, and Albert Bagur, another brother-in-law .of defendant, was donated one share.
 

 About March 15, 1920, Jules Bagur sold his 125 shares of stock to the plaintiff for $44,103.56.
 

 The price of the sale by Jules Bagur was based on the book value of the stock ascertained by taking an inventory of the assets and property of the corporation and deducting the known debts.
 

 The purchase by the plaintiff from the defendant as. already noted was made nearly two months after the purchase from Jules Bagur and at the same price.
 

 About a year after the last-mentioned sale, say March 31,. 1921, the United States made a demand on the corporation for $10,205.97 for shortage on the income tax of said corporation for the year 1918; an error having been made in the return of the income tax for that year by the corporation. The corporation paid the claim of the United States, and •charged the one-half of the same to the plaintiff.
 

 At the time of the payment of the tax by the corporation and the charge .by the corporation to the personal account of the plaintiff, the entire capital stock was owned by the plaintiff, who had been in absolute control of the business and management of the affairs of the corporation for more than a year. ■ •
 

 . This suit is brought against the defendant for one-half of the amount of the tax paid by the corporation, and which was charged to the 'plaintiff by. the corporation.
 

 The theory of the plaintiff is that the suit is for the recovery of a debt or obligation of a corporation which plaintiff was compelled to and did pay, and which defendant, in the agreement made with plaintiff when she sold him her stock in the corporation, agreed should be deducted from the purchase price, and which was not so deducted because of an erroneous construction of the income tax laws.'
 

 In other words, the counsel for plaintiff in their brief say that it is not a suit for the action of an overpayment made in a stock purchase transaction which was due to a mistake of judgment on the part of the purchaser as to its value, but that it is a suit for the return of money paid in error, and not for the rescission of the agreement.
 

 We cannot agree with counsel that it is a suit for the return of money paid in error; hence the authorities cited by the plaintiff have no application.
 

 The cited articles of the Civil Code (articles-2133, 2302) and the decisions referred to relate to cases where a person has paid a debt through mistake, believing himself a debtor. In such cases reclamation may be had of what has been so paid in error.
 

 Here the plaintiff was not a debtor of the defendant at any time in any sense. The plaintiff purchased the stock and paid cash for it at a price definitely fixed and agreed on. If there was error as to the price, it was caused by not including the amount of the income tax in the deductions from the assets of the corporation.
 

 The suit partakes rather of the nature of a suit in reduction of 'the price.
 

 But be that as it may, the real issue is as to whether defendant agreed to sell her stock at a price to be determined by taking an inventory of the assets, and deducting all outstanding debts due by the corporation at that time, whether such debts were known or un-
 

 
 *721
 
 It must be remembered that the amount now claimed by plaintiff was a debt due by the corporation, and for which the defendant was not personally liable.
 

 And it is not contended that the defendant assumed the obligation of refunding to the plaintiff any debt due by the corporation not then shown by the records and books of the corporation.
 

 If that were true, then a different case would be presented.
 

 The evidence conclusively establishes that the price of the sale made by Jules Bagur was arrived at by taking an inventory of the assets of the corporation and deducting therefrom the known debts of the corporation. The net amount thus shown was accepted by both parties as representing the book value of the stock.
 

 The affairs of the corporation were then, 'and had been at all times, under the control and supervision of the two brothers.
 

 Jules Bagur was president of the corporation, and Albert was secretary and treasurer. The defendant was not present at the time the inventory was made, did not participate in the taking of inventory, and had no knowledge at that time of the financial condition of the corporation.
 

 She was compelled to rely on the good faith and honesty of her two brothers-in-law.
 

 They represented to her the value of her stock, as shown by the inventory and statement which they had made. The business had been prosperous, and was'increasing all the time.
 

 The defendant was advised that it would be to her best interest to retain her stock. She hesitated for some time before making a decision to sell. AYhen she finally made up her mind to dispose of her stock, she sent her son to the plaintiff, with whom the sale was effected.
 

 As before stated, the defendant knew nothing of the actual value or the book value of her stock. She was totally in the dark as to the affairs of the corporation, and grossly ignorant as to business transactions.
 

 AVe shall Quote in part what the plaintiff had to say as a witness:
 

 “I went back in my office and showed her (defendant) this memorandum, and read to her the amount of stock that was written, which we ascertained by taking the inventory, and read her the figures, $72,773.40; fixtures, $12,000; bills receivable, $11,887.30; and bonus paid Pearce for the lease $5,000. In all I told her that it amounted to; after deducting the debts which were known, about $88,207.13; that he (Jules Bagur) got for his share $44,103.56, and'I said to her, ‘Xou know when your husband died, his estate was worth $16,500. Just look at the difference to-day.’ She says, ‘Yes; it is splendid, isn’t it?’ ‘Yes,’ I said, ‘it is splendid.’ I said, ‘If you want the same thing, you can get it, but my advice to you is to remain.’ ”
 

 Further on in his testimony, and referring particularly to the conversation with defendant’s son when the trade was closed, the plaintiff says:
 

 “After that she left, me thinking that she would remain with me in the business. A few days thereafter her son came to me, sobbing like a child, and told me he had never advised the mother to leave me.”
 

 After repeating some of the conversation which passed between plaintiff and defendant’s son, the plaintiff says:
 

 “He left, and in an hour’s time returned. Before leaving he told (asked), ‘AYhat is my mother going to get?’ I said, ‘Your mother is going to get this,’ and I read him the amount that his mother was going to get. He returned, and told me, ‘Uncle Albert, my mother wants to get out.’ I said, ‘If she wants to get out, come back in three days, and I will give her her money,’ and that ended the transaction. AYhen he came back, I gave him a check and gave him the bonds,” etc.
 

 The defendant testified that nothing was said about the price being based on the book value of the stock.
 

 That she signed the papers they sent her and took the money, and that was all that she could say.
 

 
 *723
 
 It is obvious from the testimony of the plaintiff himself that the defendant had nothing to do with making up the statement showing the book value. She had no knowledge of how such value was arrived at. She was told what the value was. That Jules Bagur had accepted that amount for his stock, and she accepted the same amount as the price of her stock.
 

 The transaction evidenced a complete, perfect, and unconditional sale at a price fixed and. determined by the plaintiff himself. The plaintiff purchased the stock at what the books and records showed to be its value, and there is nothing in the record to show that either party had in mind any debts or liabilities of the corporation not then shown by the books of the corporation, and certainly nothing to show that the price was to be thereafter reduced, in case it should thereafter appear that there were debts other than those which figured in the statement made by the plaintiff as the basis for his purchase.
 

 It would require .clear and convincing proof, which is totally lacking in the record, before this court would be justified in condemning the defendant to refund to the plaintiff a debt which he paid on behalf of the corporation, and for which the defendant was in no manner bound.
 

 To so hold would be in effect reducing the price of the stock to its book value in 1918 when the income tax was due, a thing manifestly never contemplated by the parties.
 

 It may well be assumed that, had the defendant any idea that she would be called upon to pay any debts of the corporation that might come to light after the sale of her stock, she never would have sold it, and it is not assuming too much to say that, had the price been reduced to the extent of the income tax due by the corporation, she would have declined to sell.
 

 We are therefore constrained to differ with our learned brother of the district court, and feel called upon to reverse his judgment. The judgment appealed from is reversed and set aside, and the plaintiff’s demand rejected at his cost.