378 So.2d 969 (1979)
Robert W. HAACKER et al., Plaintiffs-Appellants,
v.
Henry Douglas KEETH et al., Defendants-Appellees.
No. 7140.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1979.
Rehearing Denied November 21, 1979.
*970 Stephen P. Coco, Jennings, for plaintiffs-appellants.
Cassidy & Millican, F. Jefferson Millican, Jennings, for defendants-appellees.
Before GUIDRY, FORET and SWIFT, JJ.
GUIDRY, Judge.
This suit arises out of the purchase by plaintiffs from defendants of all of the common stock, representing all of the ownership, of Jefferson Davis Nursing Home and Management Corporation, hereafter referred to as the Corporation.
The sale of said stock occurred on June 14, 1976 and is evidenced by an authentic act of sale whereby defendants conveyed, with full warranty, unto plaintiffs, all outstanding stock in the Corporation for a recited consideration of $276,399.06. On the same date by means of two counter letters the parties to the transaction agreed, and so represented in writing, that the consideration recited in the authentic act of sale was not the actual consideration for such sale and transfer, rather the true consideration therefor was the payment and discharge of and/or the personal assumption of liability for the following obligations due by the Corporation, viz:

"A promissory note, No. 26132,
dated August 29, 1974, payable to
the order of Louisiana Savings
Association in the principal sum
of $705,000.00 paraphed for identification
with an Act of Mortgage
of same date."
"(1) Note balance payable to Jeff
Davis Bank & Trust Company
represented by note # A320260,
unpaid balance of $13,548.46
(2) Note balance payable to
American Bank at Jennings, Louisiana,
represented by note
# 6034, unpaid balance of 14,842.54
(3) Note balance payable to Jeff
Davis Bank & Trust Company
represented by note # 33333, unpaid
balance of 17,776.00
(4) Note balance payable to
Henry Douglas Keeth, unpaid
balance of 20,000.00
and the following other obligations of said
corporation, to-wit:
(5) All taxes due on the facility,
employee payroll taxes, F.I.C.A.,
S.S.A., etc., but not to exceed 17,500.00
(6) An accumulation of current
trade accounts for food supplies,
dietary supplies, nursing supplies,
etc., all of which have been incurred
within the past 60 days
and the total accumulation of said
bills not to exceed 9,000.00
(7) Fee payable to John W.
Hebert, Attorney at Law, for services
rendered in a suit involving
Blue Cross Insurance Company
(Emphasis ours) 700.00"

Shortly following confection of the sale demand was made upon plaintiff-purchasers for payment of accrued taxes and trade accounts due and owing by the corporation prior to June 14, 1976, greatly in excess of the amounts and limits set forth in the counter letters. As the result of an audit made in September 1976 it was determined that the total accrued taxes due by the corporation as of June 14, 1976 amounted to the sum of $34,811.41 or $17,311.41 in excess of the limit specified in the counter letters. Additionally, this same audit disclosed that the accumulation of trade accounts due by *971 the corporation as of June 14, 1976 amounted to the sum of $20,814.79 or $11,814.79 in excess of the limit specified in the counter letter.[1] There is no dispute as to the accuracy of the September audit.
Presumably the corporation had no funds with which to pay and discharge these obligations and plaintiffs, in order to protect their interest as shareholders, paid all sums due, as shown by the audit, on behalf of the corporation. Plaintiffs thereafter instituted this suit against defendants seeking to recover the total amount paid for delinquent taxes and accumulated trade accounts in excess of the limits for such items as set forth in the counter letters of June 14, 1976, plus damages and attorney's fees.
Following institution of suit defendants filed an exception of no cause and no right of action which was sustained by the trial court resulting in the dismissal of plaintiffs' suit. Plaintiffs appealed to this court and we reversed in an unpublished opinion, our docket number 6422, concluding as follows:
"Plaintiffs are not required to allege legal theories; only facts sufficient to state a cause of action. The petition in the instant case sets forth a claim for damages on the basis as fraud and misrepresentation. Possibly there are other theoretical claims; it is not required that the exact legal theories be isolated and specified in the petition. Whether plaintiffs can prove their claims remains to be seen."
Upon remand the matter was tried on its merits resulting in a second dismissal of plaintiffs' suit, the trial court concluding, in effect, that plaintiffs failed to establish fraud and in the absence of fraud a stockholder is never liable for corporate debts. The trial court further concluded in its written reasons for judgment that:
"A proper cause of action would have been for the plaintiff to sue for the recission of the sale. In the absence of the recission of the sale they have no cause of action against these defendants."
Plaintiffs appeal. We reverse.
The trial court erred in finding that this suit represents an attempt to hold a former corporate stockholder liable for corporate debts and/or that plaintiff's exclusive remedy under the pleaded facts is to rescind the sale of June 14, 1976.
Under the pleaded facts, plaintiffs in their petition seek to recover from defendants for breach of the warranty set forth in the sale of June 14, 1976.
LSA-R.S. 12:634[2], in effect on the date of sale, provides in pertinent part as follows:
"A person who for value transfers a certificate including one who assigns for value a claim secured by a certificate, unless a contrary intention appears, warrants:

(3) That he has no knowledge of any fact which would impair the validity of the certificate ..."
LSA-C.C. Article 2501 provides as follows:

"Although at the time of the sale no stipulations have been made respecting the warranty, the seller is obliged, of course, to warrant the buyer against the eviction suffered by him from the totality or part of the thing sold, and against the charges claimed on such thing, which were not declared at the time of the sale." (Emphasis ours)

Ordinarily the seller of stock warrants the genuineness of the stock and his *972 title thereto, however, the seller may give an express warranty as to the value of the stock sold. As set forth in 18 C.J.S. Corporations § 406, p. 958:
"The seller may give an express warranty as to the value of the stock sold. Representations of fact as to the property of the corporation, its productiveness, the liabilities of the corporation, and other conditions relating to the value and desirability of its shares as an investment, are proper elements of a warranty, and are not objectionable as relating to property other than the thing sold, and, where stock is bought on the strength of such representations, the absence of knowledge on the part of the seller does not affect the purchaser's right to recover for a breach of the warranty."
The courts of this state in the early cases of The State of Louisiana v. The North Louisiana & Texas Railroad Company, 34 La.Ann. 947 (La.1882) and Bagur v. Bagur, 160 La. 718, 107 So. 502 (La.1926) recognized, at least by implication, that the express warranty of a seller of stock as to corporate property or the liabilities of the corporation is enforceable.
In the sale of June 14, 1976, defendants conveyed to plaintiffs all outstanding stock in the corporation with full warranty. By written counter letter of even date defendants acknowledged that the true consideration for such sale was the agreement on the part of the plaintiffs to pay and discharge all corporate obligations which were specifically listed including delinquent taxes and accumulated trade accounts. As to the latter, defendants by the express terms of the agreement stipulated that the amounts due would not exceed certain stated limits. The June 14, 1976 counter letter concludes with the following sentence:

"The recited consideration in the said bill of sale is used solely for the purpose of convenience and your total obligation for the purchase of said stock is to see to it that all of the above described obligations to the extent of the amount listed are paid and satisfied." (Emphasis ours)
Although there is no evidence in the record to suggest fraud or intentional misrepresentation on the part of defendants, it is undisputed that an audit of the corporation's books made in September of 1976 reflected delinquent taxes and accumulated trade accounts greatly in excess of the limits set forth in the counter letter. Under the circumstances and considering the express terms of the authentic act of sale and counter letters we conclude that the sale of stock by defendants to plaintiffs was made with warranty that the amounts due by the corporation for delinquent taxes and accrued trade accounts would not exceed the limits stated therein. The contrary having been established it is clear that plaintiffs are entitled to recover for such breach of warranty the total amount of such debts due by the corporation and paid by them on the latters behalf, over and above the limits set forth in the agreement.
Plaintiffs additionally seek judgment for damages in the nature of additional excess obligations, expenses, loss of time, profits, etc., and attorney's fees. The record contains no evidence to support plaintiffs claims for additional damages and attorney's fees are not awardable unless specifically provided for by law or contract. Lloyd v. Merit Loan Company of Shreveport, Inc., 253 So.2d 117 (La.App. 2nd Cir. 1971), writ refused, 254 So.2d 462 (La.1971).
For the above and foregoing reasons the judgment of the trial court is reversed and it is now ordered, adjudged and decreed that plaintiffs do have judgment against defendants, in solido, in the full sum of TWENTY-THREE THOUSAND SIX HUNDRED ONE DOLLARS AND FIFTY CENTS ($23,601.50), together with legal interest on said sum from date of judicial demand until paid. It is further ordered, adjudged and decreed that defendants pay all costs at the trial level and on appeal.
REVERSED AND RENDERED.
NOTES
[1] Included in the listing of accounts payable as of June 14, 1976, and sued for herein, is the sum of $5524.70 representing interest accrued on the obligation due by the corporation to Louisiana Savings Association, the obligation for payment of which was specifically assumed by purchasers. Purchasers, on trial of this matter admitted the assumption of liability for this debt and in effect agreed that such sum representing accrued interest should be deducted from the overage in trade accounts as reflected by the September audit. See transcript pages 115, 116 and 119.
[2] The subject matter of LSA-R.S. 12:634 now appears in Title 10 of the Louisiana Revised Statutes of 1950, Commercial Laws, specifically R.S. 10:8-306 to 10:8-309.