DOUCET, Judge.
This appeal concerns the alleged breach of an express warranty contained in a stock redemption agreement.
James W. Salley, Inc. is a small family-owned corporation. Prior to 1986, all the stock therein was owned by James W. Salley, Sr., his sons, Richard and Curtis, (collectively hereinafter called Sellers), his wife, Mildred S. Salley, and sons, James Jr. and Robert, (collectively hereinafter called Buyers). Until 1986, the corporation was controlled by James Salley, Sr. In early 1985, Mr. and Mrs. Salley separated. They were divorced on June 12, 1986.
On July 7,1986, a stock redemption agreement was entered whereby the corporation redeemed the stock owned by the Sellers in exchange for a total payment of $2,896,-300.00. The agreement contained an express warranty in favor of the Buyers, as follows:
Warranty. Prior to the execution of this agreement, the Sellers have delivered to the Remaining Shareholders the following financial statements:
1. Balance Sheet for James W. Salley, Inc. as of May 31, 1986;
2. Income Statement for James W. Sal-ley, Inc. for the period from August 1, 1985 to May 31, 1986;
3. Balance Sheet for Salley Real Estate & Development for the period ending March 31, 1986; and
4. Income Statement for Salley Real Estate & Development for the period ending March 31, 1986.
Prior to the execution of this agreement, Sellers have made available all financial records and books of the Corporation for inspection, copying, and examination by the Remaining Shareholders, their attorneys and accountants. All financial statements in this paragraph shall collectively be referred to as the “Financial Statements”.
Sellers warrant to the Remaining Shareholders that the Financial Statements (including the notes and schedules thereto compiled by the Corporation’s accountants) are (a) true, complete and accurate; (b) have been prepared from the books and records of the Corporation in accordance with generally accepted accounting principles; (c) present fairly the current assets, property, plant, equipment, other assets, the financial position, results of operations, and changes in financial position of the Corporation for the respective periods then ended; and (d) do not omit to state any material fact necessary to be set forth herein to make such Financial Statements not misleading. Sellers further warrant that the Corporation has no liabilities or obligations of any other nature (absolute, accrued or contingent) other than those (a) shown in the Corporation’s records and its Financial Statements; and (b) those incurred in the ordinary course of business since the dates of the respective Financial Statements. Sellers further warrant that no material adverse change has occurred in the financial posture of the Corporation or with respect to its assets or liabilities from the dates of the Financial Statements to the date that this Agreement becomes effective.
Shortly after the redemption of the stock, the corporation was forced to pay $199,032.49 to the U.S. Internal Revenue Service as a result of a tax liability incurred prior to the redemption of stock. This tax liability arose out of a “tax shelter” in which James, Sr. participated individually and on behalf of the corporation. In 1979, the IRS disallowed the tax deductions taken as a result of the partic *1316 ipation in the shelter. James, Sr. filed protests both individually and on behalf of the corporation. The matter remained in litigation until 1986 when the U.S. Tax Court rendered judgment in favor of the IRS.
On June 29, 1989, James, Sr. filed a petition alleging that the individual tax liability was a community debt which had not been included in the partition of community property. He alleged that he had been required by the IRS to pay the full amount of the debt and made demand for reimbursement of the part of the debt attributable to Mildred. Mildred filed a reconventional demand naming the Sellers as defendants and claiming a breach of the warranty agreement contained in the stock redemption agreement. Mildred claimed that the corporate tax liability was not reflected in the corporate financial statements or records. She asked for damages in the amount of the corporate tax liability.
A trial on the merits was held on October 7, 1992. The trial court rendered judgment in favor of James, Sr. on the community property claim and in favor of Mildred on the reconventional demand.

WARRANTY

The majority of appellant’s assignments concern the warranty provisions of the redemption agreement.
Ordinarily the seller of stock warrants the genuineness of the stock and his title thereto, however, the seller may give an express warranty as to the value of the stock sold. As set forth in 18 C.J.S. Corporations § 406, p. 958:
“The seller may give an express warranty as to the value of the stock sold. Representations of fact as to the property of the corporation, its productiveness, the liabilities of the corporation, and other conditions relating to the value and desirability of its shares as an investment, are proper elements of a warranty, and are not objectionable as relating to property other than the thing sold, and, where stock is bought on the strength of such representations, the absence of knowledge on the part of the seller does not affect the purchaser’s right to recover for a breach of the warranty. ”
The courts of this state in the early cases of The State of Louisiana v. The North Louisiana & Texas Railroad Company, 34 La.Ann. 947 (La.1882) and Bagur v. Bagur, 160 La. 718, 107 So. 502 (La.1926) recognized, at least by implication, that the express warranty of a seller of stock as to corporate property or the liabilities of the corporation is enforceable.
Haacker v. Keeth, 378 So.2d 969, 971-972 (La.App. 3 Cir.1979).
In this case the appellant argues that there was no breach of the express warranty. Appellant alleges that an examination of the corporate books and records would have revealed the existence of the tax liability.
The trial judge in his written reasons stated that:
“Except for a very few documents, out of many, there was nothing in the Corporate records which would have put a reasonable person on notice. The financial statements submitted to the purchasers made no mention of this contingent liability.”
The court further found that Mildred was not personally aware of the tax liability prior to the stock redemption. The court apparently chose to disbelieve the testimony of James, Sr. which contradicted that of Mildred. These are factual findings and, as a result are not subject to reversal on appeal in the absence of manifest error.
After a review of the record we conclude, as did the trial judge, that the warranty was breached in several respects.
First, with regard to the financial statements the agreement warrants that:
[T]he Financial Statements (including the notes and schedules thereto compiled by the Corporation’s accountants) are (a) true, complete and accurate; (b) have been prepared from the books and records of the Corporation in accordance with generally accepted accounting principles; (c) *1317 present fairly the current assets, property, plant, equipment, other assets, the financial position, results of operations, and changes in financial position of the Corporation for the respective periods then ended; and (d) do not omit to state any material fact necessary to be set forth herein to make such Financial Statements not misleading.
However, appellant’s own expert, Coan Knight, the C.P.A. who prepared the financial statements, testified that nothing in the statements indicated existence of the tax liability. As a result the statements did not “present fairly ... the financial position, ... and changes in financial position of the Corporation for the respective periods then ended.”
Next, it appears that appellant breached that portion of the warranty which states that:
Sellers further warrant that the Corporation has no liabilities or obligations of any other nature (absolute, accrued or contingent) other than those (a) shown in the Corporation’s records and its Financial Statements; ....
The corporate records did contain documents which refer to the tax liability of the tax litigation pending at the time of the redemption. However, it would have required knowledge of the situation to fit together the various pieces of the corporate record to form a picture which would have revealed the tax liability to the uninitiated. Accordingly, we find no manifest error in the trial judge’s determination that the appellant breached the express warranty contained in the stock redemption agreement.
Further, since the record reveals that the corporate books and records failed to mention the tax liability, the financial worth of the corporation was overstated by $199,-032.49. Therefore the trial judge correctly awarded that amount in damages to appellee. See: Anderson v. Heck, 554 So.2d 695 (La.App. 1 Cir.1989), writ denied, 558 So.2d 605 (La.1990), cert. denied, 498 U.S. 846, 111 S.Ct. 132, 112 L.Ed.2d 100, (1990), and Haacker v. Keeth, supra.

EXCLUSION OF EVIDENCE

By his remaining assignments of error appellant argues that certain evidence was incorrectly excluded by the trial judge. If included appellants argue that it would show that the appellee incurred no damages as a result of the breach.
We first note that the appellant failed to cite to the record in connection with these assignments as required by Uniform Rules— Courts of Appeal 2-12.4. Where such reference is not made the court may disregard the arguments made in connection with the assignment of error. However, we will consider the appellants’ argument.
We have reviewed the evidence introduced by the appellee with regard to damages as well as the excluded evidence. After so doing we cannot say that its inclusion would have changed the outcome of the case. Therefore, even if this evidence was excluded in error, the error was harmless. Johnson v. Morris, 431 So.2d 429 (La.App. 4 Cir.), writ denied, 437 So.2d 1151 (La.1983).
Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are to be paid by appellee.
AFFIRMED.